Veronika Fabian, State Bar 018770
Hyung S. Choi, State Bar 015669
CHOI & FABIAN, PLC
90 S. Kyrene Rd., Suite #5
Chandler, Arizona  85226
tel:  (480) 517-1400
fax: (480) 517-6955
Flagstaff: (928) 779-2226
veronika@choianfabian.com
    Attorneys for Amanda Sutton

# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

|  |  |
|---|---|
| Amanda Sutton f/k/a Amanda Halbert,<br><br>Plaintiff,<br><br>vs.<br><br>Nissan Motor Acceptance Corporation, Equifax Information Services, LLC, TransUnion, LLC, Experian Information Solutions, Inc., an Ohio Corporation.<br><br>Defendants. | NO. _____<br><br><br>**COMPLAINT** |

## INTRODUCTION

1.     Defendants reported Plaintiff as being 30-59 days late on her automobile payment after she traded it in at a local dealership, Pinnacle Nissan.  Despite Plaintiff's repeated disputes, Defendants continued to report that Amanda had been 30-59 days late on a payment.  As a result, Plaintiff's credit plummeted from a 730 to a 613 and she was denied credit on numerous occasions.  Five months later, on June 12, 2015, Defendant Nissan Motor Acceptance Corporation ("NMAC")

finally admitted that it was wrong and updated Plaintiff's credit to remove the 30 days late.  Plaintiff brings this case to remedy Defendants' violations of the Fair Credit Reporting Act ("FCRA").

## JURISDICTION

2.   This Court has jurisdiction over this matter pursuant to 15 U.S.C. § 1681p.

## PARTIES

3.   Plaintiff Amanda Sutton, formerly known as Amanda Halbert ("Amanda") is a natural person and a resident of Scottsdale, Maricopa County, Arizona.

4.   Amanda is a "consumer" as defined under 15 U.S.C. § 1681a(c).

5.   Defendant NMAC is a California corporation licensed to do business in the state of Arizona.

6.   NMAC is a furnisher of information to consumer reporting agencies contemplated by 15 U.S.C. § 1681s-2 that regularly and in the ordinary course of business furnishes information to one or more consumer reporting agencies bureaus about consumer transactions or experiences with any consumer.

7.   Defendant Equifax Information Services, LLC ("Equifax") is a Georgia limited liability company licensed to do business in the state of Arizona.

8.   Equifax is a consumer reporting agency as defined in 15 U.S.C. § 1681a(f) regularly engaged in the business of assembling, evaluating, and dispersing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d), to third parties.

2

9.     Defendant Trans Union, LLC ("TransUnion") is a Delaware limited liability company licensed to do business in the state of Arizona.

10.    TransUnion is a consumer reporting agency as defined in 15 U.S.C. § 1681a(f) regularly engaged in the business of assembling, evaluating, and dispersing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d), to third parties.

11.    Defendant Experian Information Solutions, Inc. ("Experian") is an Ohio corporation licensed to do business in the state of Arizona.

12.     Experian is a consumer reporting agency as defined in 15 U.S.C. § 1681a(f) regularly engaged in the business of assembling, evaluating, and dispersing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d), to third parties.

## FACTS

### Amanda Traded in Her Sentra At Pinnacle Nissan

13.    On December 15, 2014, Amanda went to Pinnacle Nissan in Phoenix, Arizona.

14.    At the time, Amanda was driving a 2012 Nissan Sentra ("the Sentra"), with a lien on it held by NMAC.

15.    Amanda and her husband were expecting their second child in March of 2015 and wanted a bigger vehicle in which to transport their children.

16.   The following day, on December 16, 2014, Amanda signed a retail order and an installment contract for the purchase and financing of the Rogue ("the Rogue RISC).  (Retail Order and the Rogue RISC attached as Exhs. A and B).

17.   Amanda traded in the Sentra and purchased a 2012 Nissan Rogue from Pinnacle Nissan.

18.   At the time Amanda purchased the Rogue, her Experian credit score was 730.

19.   Under both the Retail Order and the RISC, Pinnacle Nissan was supposed to pay off the lien on the Sentra immediately.

20.   At the time she traded in the Sentra and signed the RISC, Amanda was current on her loan with NMAC.

21.   Amanda knew that her payment on the Sentra was due the next day, December 17.

22.   Amanda told Pinnacle Nissan that her payment was due the next day.

23.   Pinnacle Nissan assured her that the Sentra would be paid off the following day.

24.   However, Pinnacle Nissan did not pay off the Sentra immediately.

25.   Instead, Pinnacle Nissan did not pay off the Sentra until January 20, 2015, over thirty days late.

26.   Until Pinnacle Nissan paid off the account, Amanda repeatedly called the dealership in an attempt to get it to pay off the Sentra.

27.   Amanda also repeatedly called NMAC to explain what was going on.

4

28.  Upon Amanda's request, Pinnacle Nissan called NMAC and told them that it was Pinnacle Nissan's fault the December payment was late.

29.  On January 15, 2015, Pinnacle Nissan faxed a letter to NMAC stating that the delay in the payoff for the Sentra was the dealership's error.  (Pinnacle Nissan letter attached as Exh. C).

30.  Despite Pinnacle Nissan's fax, NMAC reported Amanda as 30-59 days late on a payment on the Sentra account.

**NMAC, as the Holder of the RISC is Subject to Any Claims Amanda Could Assert Against Pinnacle Nissan.**

31.  The Rogue RISC contained the following language at the middle of the back page:

> ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF, RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

32.  The RISC for the Rogue was assigned to NMAC, making NMAC the holder. (Letter from NMAC confirming assignment attached as Exh. D).

33.  Amanda was the debtor.

34.  Thus, NMAC was legally responsible for Pinnacle Nissan's failure to pay off the lien on Amanda's Sentra in a timely manner.

35.  Therefore, it was inaccurate and misleading for NMAC to report Amanda as 30-59 days late on a payment for the Sentra account.

5

**Amanda Learns That Her Credit Score Has Dropped**

36.   On January 31, 2015, Amanda checked her credit reports and learned that NMAC was reporting her as 30-59 days late on a payment on the Sentra Account.

37.   Amanda also found that her credit score had dropped to 613.

38.   Amanda, who works for Bank of America as a financial officer, was concerned about how the drop in her credit score would affect her job situation.

39.   Additionally, Amanda was concerned about how the drop in her credit score would affect her ability to do some planned home improvements on her house.

40.   On February 4, 2015, Amanda sent a dispute to all three consumer reporting agencies explaining that the Sentra account was being reported incorrectly and asking that they correct their error.   (Dispute attached as Exh. E).

**Equifax's Investigation of Amanda's First Dispute**

41.   Upon receiving Amanda's 2/4/15 dispute, Equifax electronically submitted an Automated Consumer Dispute Verification ("ACDV") to NMAC.

42.   Upon information and belief, Equifax's ACDV relayed only a limited amount of information regarding Amanda's dispute.

43.   Upon information and belief, Equifax did not convey all of the information contained in, or forward a copy of, Amanda's dispute to NMAC.

44.   Although it did not receive a complete copy of Amanda's dispute from Equifax, NMAC had independent knowledge of Amanda's dispute because of its written

and oral communications with Amanda and Pinnacle Nissan regarding the Sentra account.

45. NMAC did not conduct a reasonable investigation of Amanda's dispute.

46. Upon information and belief, NMAC verified that Amanda had been 30-59 days late on a payment on the Sentra account.

47. Upon information and belief, NMAC did not tell Equifax to indicate that Amanda disputed the late payment on the Sentra account.

48. Upon receipt of NMAC's verification, Equifax did not conduct any independent investigation into the accuracy of late payment on the Sentra account.

49. On February 25, 2015, Equifax sent Amanda the results of its "investigation" of her dispute.  (Equifax's results of investigation attached as Exh. F).

50. Amanda's Equifax credit report continued to show that Amanda had been 30-59 days late on a payment on the Sentra account.

51. Amanda's Equifax credit report did not indicate that the late payment on the Sentra account was disputed.

**TransUnion's Investigation of Amanda's First Dispute**

52. Upon receiving Amanda's 2/4/15 dispute, TransUnion electronically submitted an ACDV to NMAC.

53. Upon information and belief, TransUnion's ACDV relayed only a limited amount of information regarding Amanda's dispute.

54.   Upon information and belief, TransUnion did not convey all of the information contained in, or forward a copy of, Amanda's dispute to NMAC.

55.   Although it did not receive a complete copy of Amanda's dispute from TransUnion, NMAC had independent knowledge of the Amanda's dispute because of its written and oral communications with Amanda and Pinnacle Nissan regarding the Sentra account.

56.   NMAC did not conduct a reasonable investigation of Amanda's dispute.

57.   Upon information and belief, NMAC verified that Amanda had been 30-59 days late on a payment on the Sentra account.

58.   Upon information and belief, NMAC did not tell TransUnion that Amanda disputed the late payment on the Sentra account.

59.   Upon receipt of NMAC's verification, TransUnion did not conduct any independent investigation into the accuracy of the late payment on the Sentra Account.

60.   On March 5, 2015, TransUnion sent Amanda the results of its "investigation" of her dispute.  (TransUnion's results of investigation attached as Exh. G).

61.   Amanda's TransUnion credit report continued to report that she had been 30-59 days late on a payment on the Sentra account.

62.   Amanda's TransUnion credit report did not indicate that the late payment on the Sentra account was disputed.

**Experian's Investigation of Amanda's First Dispute**

63. Upon receiving Amanda's 2/4/15 dispute, Experian electronically submitted an ACDV to NMAC.

64. Upon information and belief, Experian's ACDV relayed only a limited amount of information regarding Amanda's dispute.

65. Upon information and belief, Experian did not convey all of the information contained in, or forward a copy of, Amanda's dispute to NMAC.

66. Although it did not receive a complete copy of Amanda's dispute from Experian, NMAC had independent knowledge of Amanda's dispute because of its written and oral communications with Amanda and Pinnacle Nissan regarding the Sentra account.

67. NMAC did not conduct a reasonable investigation of Amanda's dispute.

68. Upon information and belief, NMAC verified that Amanda had been 30-59 days late on a payment on the Sentra account.

69. Upon information and belief, NMAC did not tell Experian that Amanda disputed late payment on the Sentra account.

70. Upon receipt of NMAC's verification, Experian did not conduct any independent investigation into the accuracy of the late payment on the Sentra Account.

71. Amanda's Experian credit report continued to show that Amanda had been 30-59 days late on a payment on the Sentra account.

72. Amanda's Experian credit report did not indicate that the late payment on the Sentra account was disputed.

### Amanda Stops Working and Goes to the Hospital

73. At the time Amanda learned that Defendants had ignored her first dispute, Amanda was eight months pregnant and approaching her due date.

74. Amanda became more anxious and concerned because she felt helpless to correct the error as it did not appear that anyone was listening to her or taking her disputes seriously.

75. On February 27, 2015, Amanda began having contractions and abnormal discharge.

76. As a result, she went to the hospital.

77. At the hospital, the doctor performed an ultrasound and told her that her baby was okay.

78. The doctor discharged her telling her that she should go home, stay off her feet, and stop stressing out.

79. Amanda followed the doctor's instructions.

80. On March 9, 2015, Amanda and her husband's second son, Brody Sutton, was born.

### Defendants Continued to Report the Sentra Account Incorrectly

81. Approximately one week after her baby was born, Amanda checked her credit report and was dismayed to find that the Sentra account still showed a late payment and that her credit score was still very low.

82. On April 1, 2015, Amanda sent a second dispute to all three consumer reporting agencies explaining why the Sentra Account was being reported incorrectly and asking that they correct their error.   (Dispute attached as Exh. H, enclosures omitted).

83. Amanda's dispute was fourteen pages long.

**Equifax's Investigation of Amanda's Second Dispute**

84. Upon receiving Amanda's 4/1/15 dispute, Equifax electronically submitted an ACDV to NMAC.

85. Upon information and belief, Equifax's ACDV relayed only a limited amount of information regarding Amanda's dispute.

86. Upon information and belief, Equifax did not convey all of the information contained in, or forward a copy of, Amanda's dispute to NMAC.

87. Although it did not receive a complete copy of Amanda's dispute from Equifax, NMAC had independent knowledge of Amanda's dispute because of its written and oral communications with Amanda and Pinnacle Nissan regarding the Sentra account.

88. NMAC did not conduct a reasonable investigation of Amanda's dispute.

89. Upon information and belief, NMAC verified that Amanda had been 30-59 days late on a payment on the Sentra account.

90. Upon information and belief, NMAC did not tell Equifax to indicate that Amanda disputed the late payment on the Sentra account.

91. Upon receipt of NMAC's verification, Equifax did not conduct any independent investigation into the accuracy of late payment on the Sentra Account.

92. On April 25, 2015, Equifax sent Amanda the results of its "investigation" of her dispute.  (Equifax's results of investigation attached as Exh. I).

93. Amanda's Equifax credit report continued to show that Amanda had been 30-59 days late on a payment on the Sentra account.

94. Amanda's Equifax credit report did not indicate that the late payment on the Sentra account was disputed.

**TransUnion's Investigation of Amanda's Second Dispute**

95. Upon receiving Amanda's 4/1/15 dispute, TransUnion did not investigate it.

96. Instead, on April 8, 2015, TransUnion responded that it did not intend to investigate her dispute because it had already done so.

**Experian's Investigation of Amanda's Second Dispute**

97. Upon receiving Amanda's 4/1/15 dispute, Experian electronically submitted an ACDV to NMAC.

98. Upon information and belief, Experian's ACDV relayed only a limited amount of information regarding Amanda's dispute.

99. Upon information and belief, Experian did not convey all of the information contained in, or forward a copy of, Amanda's dispute to NMAC.

100. Although it did not receive a complete copy of Amanda's dispute from Experian, NMAC had independent knowledge of Amanda's dispute because of its written and oral communications with Amanda and Pinnacle Nissan regarding the Sentra account.

101. NMAC did not conduct a reasonable investigation of Amanda's dispute.

102. Upon information and belief, NMAC verified that Amanda had been 30-59 days late on a payment on the Sentra account.

103. Upon information and belief, NMAC did not tell Experian that Amanda disputed the late payment on the Sentra account.

104. Upon receipt of NMAC's verification, Experian did not conduct any independent investigation into the accuracy of late payment on the Sentra account.

105. On April 9, 2015, Experian sent Amanda the results of its "investigation" of her dispute.  (Experian's results of investigation attached as Exh. J).

106. Amanda's Experian credit report continued to show that Amanda had been 30-59 days late on a payment on the Sentra account.

107. Amanda's Experian credit report did not indicate that the late payment on the Sentra account was disputed.

**Amanda is Denied Credit And Her Credit Limits Are Lowered**

*American Express*

108.   On May 1, 2015, Amanda applied for an American Express credit card to assist with additional expenses for the baby.

109.   In connection with her application for credit, American Express reviewed Amanda's Experian credit report.

110.   Amanda's Experian credit report showed that she had been 30-59 days late on a payment on the Sentra account.

111.   At the time, Amanda's Experian credit score was 666.

112.   On May 1, 2015, American Express denied her application for a credit card. (Adverse Action letter attached as Exh. K).

113.   American Express based its decision, at least in part, on the incorrect NMAC information contained in her Experian Credit Report.

*Capital One*

114.   On May 4, 2015, Amanda applied for a credit card with Capital One.

115.   In connection with her application for credit, Capital One pulled Amanda's Equifax credit report on May 4, 2015.

116.   At the time, Amanda's Equifax credit report showed that she had been 30-59 days late on a payment on the Sentra account.

117.   At the time, Amanda's Equifax credit score was only 614.

118.   On May 5, 2015, Capital One denied Amanda's application for a credit card. (Capital One Adverse Action letter attached as Exh. L).

119. Capital One based its decision, in part, on the incorrect NMAC information contained in her Equifax Credit Report.

*Barclays Bank*

120. Amanda had maintained a Barclays Bank Rewards Mastercard since October of 2013.

121. On May 5, 2015, Barclays Bank pulled Amanda's credit in connection with a regular account review.

122. At the time, Amanda's TransUnion credit report showed that she had been 30-59 days late on a payment on the Sentra account.

123. At the time, Amanda's TransUnion credit score was 655.

124. Based in part on the incorrect information contained in her TransUnion credit report, Barclays Bank lowered Amanda's credit line from $12,400 to $10,800. (Barclays Bank adverse action letter attached as Exh. M).

**Amanda Is Distressed**

125. Each time Amanda received these denials and decrease in credit, she became more and more anxious.

126. Instead of enjoying her time with her newborn son while on maternity leave, Amanda spent her time trying to figure out what to do about her incorrect credit reports.

127. Amanda began to have trouble lactating enough to properly feed her son.

128.   On May 17, 2015, Amanda sent a third and final dispute to all three consumer reporting agencies explaining why the Sentra account was being reported incorrectly and asking that they correct their error.  (A copy of Amanda's dispute is attached as Exh. N).

**Equifax's Investigation of Amanda's Third Dispute**

129.   Upon receiving Amanda's 5/17/15 dispute, Equifax electronically submitted an ACDV to NMAC.

130.   Upon information and belief, Equifax's ACDV relayed only a limited amount of information regarding Amanda's dispute.

131.   Upon information and belief, Equifax did not convey all of the information contained in, or forward a copy of, Amanda's dispute to NMAC.

132.   Although it did not receive a complete copy of Amanda's dispute from Equifax, NMAC had independent knowledge of Amanda's dispute because of its written and oral communications with Amanda and Pinnacle Nissan regarding the Sentra account.

133.   NMAC did not conduct a reasonable investigation of Amanda's dispute.

134.   Upon information and belief, NMAC verified that Amanda had been 30-59 days late on a payment on the Sentra account.

135.   Upon information and belief, NMAC did not tell Equifax to indicate that Amanda disputed the late payment on the Sentra account.

136.   Upon receipt of NMAC's verification, Equifax did not conduct any independent investigation into the accuracy of the late payment on the Sentra account.

137.   On June 6, 2015, Equifax sent Amanda the results of its "investigation" of her dispute.  (Equifax's results of investigation attached as Exh. O).

138.   Amanda's Equifax credit report continued to show that Amanda had been 30-59 days late on a payment on the Sentra account.

139.   Amanda's Equifax credit report did not indicate that the late payment on the Sentra account was disputed.

### TransUnion's Investigation of Amanda's Third Dispute

140.   Upon receiving Amanda's 5/17/15 dispute, TransUnion electronically submitted an ACDV to NMAC.

141.   Upon information and belief, TransUnion's ACDV relayed only a limited amount of information regarding Amanda's dispute.

142.   Upon information and belief, TransUnion did not convey all of the information contained in, or forward a copy of, Amanda's dispute to NMAC.

143.   Although it did not receive a complete copy of Amanda's dispute from Equifax, NMAC had independent knowledge of the Amanda's dispute because of its written and oral communications with Amanda and Pinnacle Nissan regarding the Sentra account.

144.   NMAC did not conduct a reasonable investigation of Amanda's dispute.

145. Upon information and belief, NMAC verified that Amanda had been 30-59 days late on a payment on the Sentra account.

146. Upon information and belief, NMAC did not tell TransUnion that Amanda disputed the late payment on the Sentra account.

147. Upon receipt of NMAC's verification, TransUnion did not conduct any independent investigation into the accuracy of the late payment on the Sentra Account.

148. On June 10, 2015, TransUnion sent Amanda the results of its "investigation" of her dispute.  (TransUnion's results of investigation attached as Exh. P).

149. Amanda's TransUnion credit report continued to show that Amanda had been 30-59 days late on a payment on the Sentra account.

150. Amanda's TransUnion credit report did not indicate that the late payment on the Sentra account was disputed.

**Experian's Investigation of Amanda's Third Dispute**

151. Upon receiving Amanda's 5/17/15 dispute, Experian electronically submitted an ACDV to NMAC.

152. Upon information and belief, Experian's ACDV relayed only a limited amount of information regarding Amanda's dispute.

153. Upon information and belief, Experian did not convey all of the information contained in, or forward a copy of, Amanda's dispute to NMAC.

154.  Although it did not receive a complete copy of Amanda's dispute from Experian, NMAC had independent knowledge of the Amanda's dispute because of its written and oral communications with Amanda and Pinnacle Nissan regarding the Sentra account.

155.  NMAC did not conduct a reasonable investigation of Amanda's dispute.

156.  Upon information and belief, NMAC verified that Amanda had been 30-59 days late on a payment on the Sentra account.

157.  Upon information and belief, NMAC did not tell Experian that Amanda disputed the late payment on the Sentra account.

158.  Upon receipt of NMAC's verification, Experian did not conduct any independent investigation into the accuracy of late payment on the Sentra Account.

159.  On June 4, 2015, Experian sent Amanda the results of its "investigation" of her dispute.  (Experian's results of investigation attached as Exh. Q).

160.  Amanda's Experian credit report continued to show that Amanda had been 30-59 days late on a payment on the Sentra account.

161.  Amanda's Experian credit report did not indicate that the late payment on the Sentra account was disputed.

## **Amanda Continues to Be Denied Credit**

*Wells Fargo*

162.  Amanda decided to try to obtain a loan for her home improvement.

163.   Amanda and her husband wanted to make some home improvements so that they could refinance their home and get rid of the Purchase Money Insurance they had to purchase in connection with their original mortgage.

164.   Amanda applied to Wells Fargo for a personal loan for home improvement.

165.   In connection with her application for credit, Wells Fargo pulled Amanda's Experian credit report on June 11, 2015.

166.   At the time, Amanda's Experian credit report showed that she had been 30-59 days late on a payment on the Sentra account.

167.   At the time, Amanda's Experian credit score was 632.

168.   On June 19, 2015, Wells Fargo denied Amanda's application for a personal loan. (Wells Fargo Adverse Action letter attached as Exh. R).

169.   Wells Fargo based its decision, in part, on the incorrect information contained in her Experian Credit Report.

*Lowe's Credit Card*

170.   Amanda had a Lowe's credit card issued by Synchrony Bank.

171.   When Wells Fargo denied her credit, Amanda decided to try to get an increased credit limit on her Lowe's credit card to use to make home improvements.

172.   Synchrony Bank had pulled Amanda's TransUnion credit report on March 12, 2015 in connection with an account review.

173.   At the time, Amanda's TransUnion credit report showed that she had been 30-59 days late on a payment on the Sentra account.

174.   At the time, Amanda's TransUnion credit score was only 633.

175.   On June 18, 2015, Synchrony Bank denied Amanda's request for a credit line increase.  (Synchrony Bank Adverse Action letter attached as Exh. S).

176.   Synchrony Bank based its decision, in part, on the incorrect information contained in her TransUnion Credit Report.

### NMAC Finally Corrects Amanda's Credit Report

177.   Amanda also sent NMAC a copy of her 5/17/15 dispute.

178.   On June 12, 2015, NMAC sent Amanda a letter and stating that it was updating its reporting of her account to show that she was never late on the Sentra account.  (Copy of NMAC's letter attached as Exh. T).

179.   Amanda was relieved but learned that her credit score had not returned to its prior level.

### CAUSE OF ACTION NO. 1: VIOLATION OF THE FCRA
### (Against NMAC Only)

180.   NMAC violated the FCRA by willfully and/or negligently failing to conduct a reasonable investigation of Amanda's disputes in accordance with 15 U.S.C. § 1681s-2(b).

181.   As a result of NMAC's violations of the FCRA, Amanda was damaged in an amount to be determined by this Court.

182.   NMAC's conduct, action and inaction was willful, rendering it liable for statutory and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

183.   In the alternative, it was negligent, entitling Amanda to recover her actual damages under 15 U.S.C. § 1681o.

184.   Amanda is entitled to recover actual and/or statutory damages, punitive damages, costs and attorney's fees from NMAC pursuant to 15 U.S.C. § 1681n and/or § 1681o.

### CAUSE OF ACTION NO. 2: VIOLATION OF THE FCRA
### (Against Equifax, TransUnion, and Experian Only)

185.   Equifax, TransUnion, and Experian violated the FCRA by willfully and/or negligently by:

a.     By failing to conduct a reasonable reinvestigation upon Amanda's disputes of the late payment on the Sentra account.  15 U.S.C. § 1681i(a)(1).

b.     By failing to provide NMAC with all of the relevant information it received from Amanda's dispute.  15 U.S.C. § 1681i(a)(2).

186.   As a result of Defendants' violations of the FCRA, Amanda was damaged in an amount to be determined by this Court.

187.   Defendants' conduct, action and inaction was willful, rendering it liable for statutory and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

188.   In the alternative, Defendants were negligent, entitling Amanda to recover her actual damages under 15 U.S.C. § 1681o.

189.    Amanda is entitled to recover actual and/or statutory damages, punitive damages, costs and attorney's fees from NMAC pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## JURY TRIAL REQUESTED

190.    Amanda requests a jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Amanda prays that this Court enter Judgment in her favor and against Defendants for the following:

    a.    Actual damages,

    b.    Statutory damages,

    c.    Punitive damages,

    d.    Attorney's fees and costs;

    e.    Interest on the judgment rendered herein at the maximum lawful rate from the date of its rendition until paid in full; and,

    f.    Such other and further relief as this Court deems just and proper.

DATED this 30th day of July, 2015.

CHOI & FABIAN, PLC


By: /s/ Veronika Fabian
    Veronika Fabian
    Attorneys for Amanda Sutton